# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YVONNE JOANNE HERNANDEZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | Case No. 1:20-cv-00527-SAB<br><br>ORDER GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 16, 20, 21) |

**I.**

**INTRODUCTION**

Yvonne Joanne Hernandez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1] For the reasons set forth below, Plaintiff's Social Security appeal shall be granted.

///

///

///

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and the matter has been assigned to the undersigned for all purposes. (See ECF Nos. 8, 11, 22.)

## II.

## BACKGROUND

### A. Procedural History

Plaintiff protectively filed a Title XVI application for supplemental security income on January 6, 2016, alleging a period of disability beginning on July 20, 2015. (AR 13, 173-78.) Plaintiff's application was initially denied on October 24, 2016, and denied upon reconsideration on January 20, 2017. (AR 94-98, 104-109.) Plaintiff requested and received a hearing before Administrative Law Judge Timothy S. Snelling (the "ALJ"). (AR 110-112.) Plaintiff appeared for a hearing on November 14, 2018. (AR 29-60.) On February 8, 2019, the ALJ found that Plaintiff was not disabled. (AR 10-28.) The Appeals Council denied Plaintiff's request for review on February 28, 2020. (AR 1-6.)

Plaintiff filed action on April 13, 2020, and seeks judicial review of the denial of her application for disability benefits. (ECF No. 1.) On December 11, 2020, Defendant filed the administrative record ("AR") in this action. (ECF No. 12.) On March 18, 2021, Plaintiff filed an opening brief. (Pl.'s Opening Br. ("Br."), ECF No. 16.) On May 4, 2021, Defendant filed an opposition brief. (Def.'s Opp'n ("Opp'n"), ECF No. 20.) On May 19, 2021, Plaintiff filed a reply brief. (Pl.'s Reply ("Reply"), ECF No. 21.)

### B. Administrative Hearing Testimony

Plaintiff appeared with counsel and testified at the November 14, 2018 hearing before the ALJ. (AR 29-60.) Plaintiff was fifty-three (53) years old on the date of the hearing, and fifty (50) years old as of the alleged onset date. (AR 34-35.) Plaintiff smoked marijuana and had just quit smoking in the beginning of November. (AR 34.) Plaintiff has asthma and has difficulty breathing sometimes. (Id.)

Plaintiff graduated from high school and attended two years of college, receiving an Associate of Science degree in criminology. (AR 34-35.) Plaintiff stated she did not have the chance to use her degree because she became sick right after, and that is where her depression stems from. (AR 35.) Plaintiff worked seasonally and part time as a bookstore cashier while she was attending college from 2006 through 2007. (AR 35-36.) In 2008, she worked as a food

1  safety inspector for a packing house. (AR 36.) She worked in the bookstore for two to three
2  years until they asked her to resign. (AR 55-56.) She fell at work in the bookstore and hurt her
3  ankle. (AR 56.) When she came back to work her back started acting up and she was unable to
4  stand. (AR 56.) After she worked for eight hours standing, she took two days off of work due to
5  the pain. (AR 56.) They told her it did not look like she was going to be able to do the job and
6  asked her to consider resigning. (AR 56.) She resigned on the condition that she could come
7  back if she got it fixed. (AR 56.) She saw a specialist who told her that she had arthritis in her
8  lower back that was just going to get worse and she will eventually be in a wheelchair. (AR 56.)
9  That was what caused her to spin out of control and almost commit suicide. (AR 56.) She might
10 also have arthritis in her ankles and knees. (AR 57.)

11  A vocational expert ("VE") Jose L. Chaparro testified at the hearing. (AR 36-37, 54-55,
12 57-58.) The VE testified that the food safety position was classified as an industrial safety and
13 health technician, DOT Code 168.161-014, skilled work with an SVP of 6, light. (AR 37.) The
14 VE noted that in Ex. 5E, Plaintiff described the work as medium, as actually performed. (Id.)

15  Plaintiff was then examined by her counsel. Plaintiff testified she is unable to work
16 fulltime because she has standing limitations. (AR 37.) She cannot lift anything that is too
17 heavy. (AR 38.) She has pain in her lower back and throughout her body, such as her hips, mid
18 back, and neck. (AR 38.) Plaintiff stated there are no other physical issues besides pain that
19 would preclude her from working. (AR 38.)

20  Plaintiff stated she does not have any mental issues that would affect her ability to work.
21 (AR 38.) Plaintiff was treated for depression in 2016 and was suicidal but is no longer being
22 treated, although she does take medication for depression. (AR 38.) The medication helps her.
23 (AR 39.) Because of depression, Plaintiff has difficulty concentrating and remembering things
24 and sleeps a lot, up to a three hour nap, during the day. (AR 39.) Plaintiff was suicidal, but was
25 not hospitalized. (AR 39.)

26  Plaintiff sleeps a lot, including during the day. (AR 40.) Plaintiff has difficulty sleeping
27 at night due to her insomnia and sleep apnea, and is always tired. (Id.) Plaintiff was placed on
28 medication about a year ago due to her inability to sleep and it is really helping. (AR 40-41.)

3

1  She only naps when she is in pain. (AR 41.)

2  During the week, Plaintiff's pain averages about a level seven out of ten. (AR 41-42.) When she takes her medication her pain will be a three out of ten. (AR 42.) Her medication reduces her pain for about four hours. (AR 42.) During these four hours she will do the washing, sweep, mop, do dishes, and get her nephew to school. (AR 42.)

Plaintiff babysits her five year old nephew five days a week. (AR 42-43, 52.) Her nephew is dropped off at 5:30 in the morning and she gets him dressed and takes him to school. (AR 43.) He is in kindergarten and she drives him less than a mile to school. (AR 44.) She picks her nephew up at 3:00 p.m. and has him for two to three hours before he is picked up. (AR 44.) She will go over his homework with him.

If Plaintiff naps, it will be after her nephew leaves, the earliest would be 3:00 p.m. and sometimes not until 6:00 p.m. in the evening. (AR 45.) Plaintiff tries not to nap in the evening because then she will be up all night.

Plaintiff is able to stand and walk for ten minutes before the pain forces her to sit down. (AR 45.) She will need to rest for fifteen minutes before standing and walking for another ten minutes. (AR 45.) Plaintiff can sit for twenty to thirty minutes before needing to stand up or lie down. (AR 46.) Plaintiff stated she can lift and carry ten to twenty pounds, but was unsure. (AR 46.) She stated she cannot lift a case of water, and answered "[t]hat's about correct" when asked if she could lift two gallons of milk out of the refrigerator. (AR 46.)

The ALJ inquired about a cane, and Plaintiff answered she uses a cane which was prescribed about a year prior to the hearing. (AR 46.) Plaintiff stated it was prescribed by Dr. Peters, a long term treating physician that she sees about once a month.

Examination by counsel then proceeded. Plaintiff answered she does not really use her cane in the home, but does use it when she goes to church, and may use it at the grocery store or to pick up her nephew if she is hurting. (AR 47-48.) She is able to walk half a football field with her cane and would usually need to stop and rest before continuing walking. (AR 52.) Plaintiff goes to the grocery store by herself and is able to push the cart and grab items from the shelf. (AR 48.) It will take her two hours because she is slow. (AR 48.) She does not take

4

1  breaks, but leans on the cart a lot and takes her time looking at both sides of the aisle.  (AR 48.)

2  At times, Plaintiff has problems getting in the shower, and it hurts to go to the restroom 3 because it hurts to squat at that level.  (AR 48.)  This pain occurs the most often in the winter. 4 (AR 48-49.)  Plaintiff leans against her bed to put her pants on one leg at a time.  (AR 49.)

5  If Plaintiff is in a lot of pain she will not do her housework for days.  (AR 49.)  She has 6 gone up to five days in a month without doing her chores due to pain.  (AR 49.)  She was very 7 unproductive on those days.  (AR 49.)  She would sit on a heating pad most of the time with her 8 legs elevated and slept with the heating pad.  (AR 49-50.)  She would sit for half an hour and 9 then get up and walk around a little bit.  (AR 50.)

10  Plaintiff started going to church two years ago and attends three times per week.  (AR 11 50.)  She attends service, a bible study, and prayer meeting.  (AR 50.)  The service is usually two 12 hours long.  (AR 50.)  She will sit in the back next to an outlet so she can plug in her heating pad 13 and will have to get up.  (AR 50.)  The bible study and prayer meetings are also two hours and 14 she will alternate standing and sitting.  (AR 50-51.)  During the two hour meetings, Plaintiff is 15 able to concentrate and pay attention most of the time, and converses and has no problems 16 associating with the people.  (AR 51.)  If she feels a lot of pain she will walk out before the 17 meeting has finished.  (AR 51.)  That has happened three times in the last three months.  (AR 18 51.)

19  Plaintiff can get around on the computer.  (AR 52.)  She watches a lot of news.  (AR 52.) 20 She reads and has been reading a lot of the bible.  (AR 53.)  Plaintiff finds reading the bible 21 makes her a better person and less depressed.  (AR 53.)  Suicide runs in her family and two of 22 her brothers committed suicide.  She takes medication for her depression also.  (AR 54.) 23 Plaintiff believes the medication is an effective combination.

24  The ALJ presented a hypothetical person to the VE restricted to light work, lifting and 25 carrying limited to 20/10 pounds, standing and walking six of eight hours, sitting six out of eight 26 hours, cannot climb ladders, ropes or scaffolding, all other postural activities can be performed 27 on an occasional basis, including climbing of ramps and stairs, crouching, crawling, kneeling, 28 and stooping, and must avoid concentrated exposure to temperature extremes, dampness,

1  vibration ad pulmonary irritants.  (AR 54.)  The VE stated such person would be able to perform
2  the work described above, industrial safety and health technician.  (AR 55.)

3        The ALJ asked if Plaintiff's former employer offered to bring her back to work with
4  double her pay and benefits, Plaintiff would not have a problem with that but they would have to
5  work around her limitations.  (AR 55.)  Plaintiff stated she would need to be able to alternate
6  from the cash register to a position that she could do sitting down.  (AR 55.)  Plaintiff was
7  speaking of the bookstore position here.  The VE confirmed such description would be classified
8  as Cashier II, DOT code 211.462-010, with an SVP 2, unskilled and light.  (AR 57.)  The VE
9  confirmed hypothetical # 1 could perform the position.

10        The ALJ presented hypothetical # 2 that matched # 1, but the person would need to use a
11  cane for uneven terrain and for long distance walking of more than 50 yards each hour.  The VE
12  confirmed hypothetical # 2 could perform both jobs.  (AR 57-58.)

13      **C.**    **ALJ Findings**
14      The ALJ made the following findings of fact and conclusions of law.

- Plaintiff has not engaged in substantial gainful activity since January 6, 2016, the application date.
- Plaintiff has the following severe combination of impairments: spinal disorder with degenerative disc disease and disc bulging, arthritis, chronic obstructive pulmonary disease (COPD), depression, anxiety, hypertension, chronic pain syndrome, marijuana dependence, asthma, gastritis, anemia, allergies, obstructive sleep apnea, and adjustment disorder not otherwise specified.
- Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.
- Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. 416.967(b) except Plaintiff can lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk six hours and sit six hours in an eight-hour workday, occasionally climb ramps and stairs, balancing, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; and she should avoid concentrated exposure to extreme

- cold and heat, wetness/humidity, vibration, and pulmonary irritants. Plaintiff also needs a cane or assistive device for uneven terrain or long distance walking more than 50 yards each hour.
- Plaintiff is capable of performing past relevant work as an industrial safety and health tech and cashier. This work does not require the performance of work-related activities precluded by the Plaintiff's residual functional capacity.
- Plaintiff has not been under a disability, as defined in the Social Security Act, since January 6, 2016, the date the application was filed.

(AR 15-22.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520;[2] Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.

---

[2] The cases generally cited herein reference the regulations which apply to disability insurance benefits, 20 C.F.R. §404.1501 et seq., however Plaintiff is also seeking supplemental security income, 20 C.F.R. § 416.901 et seq. The regulations are generally the same for both types of benefits. Therefore, further references are to the disability insurance benefits regulations, 20 C.F.R. §404.1501 et seq.

7

> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff raises two primary challenges to the ALJ's decision. First, that the ALJ erred by assigning reduced weight to Plaintiff's consultative examination opinions and treating source

opinion without specific and legitimate reasons. Second, that the ALJ's RFC analysis is not supported by substantial evidence. Plaintiff's challenge concerning the RFC determination incorporates the argument that the ALJ failed to provide clear and convincing reasons to discount Plaintiff's symptom testimony. As explained herein, the Court finds the ALJ erred in weighing the consultative opinions warranting a remand for further administrative proceedings, and the Court need not address Plaintiff's remaining challenge to the RFC and credibility determination.

### A. The ALJ Failed to Provide Specific and Legitimate Reasons in Assigning Reduced Weight to the Consultative Opinions

Plaintiff argues the ALJ erred by failing to defer to the medical source statements of the two specialist consultative examiners, Dr. Fabella (AR 696-701), and Dr. Wagner (AR 959-970), as well as one treating physician medical source statement from Dr. Kissinger (AR 413), over the opinions of the non-examining state agency physician opinions, without specific and legitimate reasons. (Br. 18-31.)

#### 1. Legal Standard

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional. See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). In general a treating physician's opinion is entitled to greater weight than that of a nontreating physician because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995) (citations omitted). If a treating physician's opinion is contradicted by another doctor, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record. Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (quoting Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005)).

Where the treating physician's opinion is contradicted by the opinion of an examining physician who based the opinion upon independent clinical findings that differ from those of the treating physician, the nontreating source itself may be substantial evidence, and the ALJ is to resolve the conflict. Andrews, 53 F.3d at 1041. However, if the nontreating physician's opinion is based upon clinical findings considered by the treating physician, the ALJ must give specific

and legitimate reasons for rejecting the treating physician's opinion that are based on substantial evidence in the record. Id.

The contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, however, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings. Thomas, 278 F.3d at 957.

2. The ALJ's Citation to Conservative Treatment was Not Specific and Legitimate

Dr. Fabella opined that Plaintiff: (1) can lift and carry 10 pounds occasionally and less than 10 pounds frequently; (2) can walk and stand for less than 4 hours out of an 8 hour workday; (3) requires breaks from sitting every 10 minutes or so; (4) is able to climb, balance, kneel, and crawl occasionally; (5) is unable to walk on uneven terrain, climb ladders, or work at heights; (6) has some visual impairment likely correctible with lenses; (7) has no hand use impairment or fine fingering impairment; and (8) should avoid cold exposure. (AR 700.) The ALJ accurately stated these opined limitations when the ALJ initially summarized the consultative examination opinion in the order. (AR 19-20.)

The ALJ made the following findings and determinations in assigning weight to the opinions of Dr. Wagner and Dr. Fabella:

> The undersigned gives both of these opinions and reports some weight in making these decisions. The conservative treatment does not appear to support the alleged limitation to a range of sedentary work indicating [sic] by Dr. Fabella or the range of medium work indicated by Dr. Wagner. The undersigned notes that the claimant does use an assistive device for long distance ambulation and she testified that she could lift up to 20 pounds. She has also maintained full motor strength of her extremities despite her conditions. The undersigned finds that the complaints of back and neck pain warrant a restriction to only occasional postural activities. She takes narcotic pain medication, which would also limit her ability to tolerate climbing ladders, ropes, and scaffolds; and the record supports limits on exposure to cold, as discussed herein. The undersigned notes that the normal shoulder findings do not support a limitation on overhead reaching.
>
> State agency medical consultants R. Fast, MD and C. Bullard, MD

> concluded the claimant could perform light work with occasional postural activities (Exhibits 1A, pp. 12-13; 3A, pp. 11, 12). The undersigned gives these opinions significant weight as consistent with the overall record; however, he finds additional environmental limitations and use of an assistive device for long distances is supported by the overall record, including subjective and objective findings.

(AR 20).

Turning to Plaintiff's more specific proffered errors,[3] Plaintiff primarily argues the ALJ erred by lumping Dr. Fabella's opinion together with Dr. Wagner's, affording them both some weight but ultimately rejecting Dr. Fabella's sedentary (or less than sedentary) limitations on standing, walking and sitting. Plaintiff submits the ALJ's statement makes it impossible to determine what specific aspects of each examining physician's limitation/opinion to which the ALJ is referring and what evidence the ALJ believes either supports or contradicts the opinion, Angelica R. v. Saul, 2019 WL 5618079 (Oct. 31, 2019, C.D. Cal.) (finding that the ALJ harmfully erred failed to provide the requisite "specific" reasons for rejecting two different workers' compensation physicians because he "lumped together the multiple opinions"). Plaintiff contends the lack of specificity error is particularly harmful because the ALJ opined in the decision that Drs. Fabella and Wagner offered two very different RFC opinions, that is, per the ALJ's supposition, Dr. Fabella found Ms. Hernandez could perform a "range of sedentary work" and Dr. Wagner found that Ms. Hernandez could perform a "range of medium work," which have vastly different physical requirements, notably regarding standing and walking.

Plaintiff directs the Court to SSR 83-10 which provides that: "A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds." Titles II & Xvi: Determining Capability to Do Other Work-the Med.-Vocational

---

[3] Plaintiff also proffers that while the ALJ describes Dr. Fabella's opinion as allowing a "range of sedentary work," the opinion in fact is for "less than sedentary work" as it reflects an inability to sustain 8-hours a day, 5 days a week for a continued basis. However Plaintiff maintains interpreting the opinion either way results in a finding that Plaintiff is disabled. (Br. 22 n. 5.) Plaintiff also submits that Dr. Fabella's documented examination findings fully support the opinion, including "MRI-documented bi-level bulging disc at L4-L5 and L5-S1 with mild to moderate neural foraminal stenosis"; examination findings of decreased mange of motion; positive straight leg raise findings; loss of balance when walking on heels; and stiff torso posture. (Br. 22, AR 698-700). The Court need not resolve these challenges given the particular errors found herein.

Rules of Appendix 2, SSR 83-10 (S.S.A. 1983) ("In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time."). Plaintiff further highlights SSR 83-10 provides that "Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."  Id. Relatedly, Plaintiff contends the ALJ's citation to a conservative treatment is not a specific and legitimate reason to reject the opined limitations of Drs. Fabella and Wagner because it is a "vague and conclusory" statement, as the ALJ fails to cite to the examples of what the ALJ deems to be the supposed "conservative" treatment in the record.  (Br. 24.)

The regulations provide the following description of sedentary work:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).  The regulations provide the following description of light work:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).  The regulations provide the following description of medium work:

> Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

20 C.F.R. § 404.1567(c).

Again, as the first rationale for assigning reduced weight to the consultative examination

opinions, the ALJ stated: "The conservative treatment does not appear to support the alleged limitation to a range of sedentary work indicating [sic] by Dr. Fabella or the range of medium work indicated by Dr. Wagner. (AR 20.) While Plaintiff argues the ALJ failed to cite to examples of what the ALJ deemed to be conservative treatment, the Court notes that in the findings regarding symptom testimony, preceding the physician opinion analysis portion of the order, the ALJ did state the Plaintiff's statements regarding symptoms were: "inconsistent because despite the claimant's complaints, providers have treated her conservatively with medication and minimal physical therapy. There is also evidence of noncompliance with treatment, as toxicology tests were negative for prescribed drugs and positive for other substances." (AR 18.) The ALJ continued to describe various treatments and physical therapy when generally describing the medical history, including listing medications such as tramadol and hydrocodone, and recommendations of stretching, orthotics, exercise, massage, and diet. (AR 18-19.) The ALJ noted: improvement with mental health medication; that she stopped taking medication prescribed by her psychiatrist; that complaints of fatigue resolved with nutritional support; and that hypertension and COPD were controlled with medication. (AR 19.)

These citations in the general summary and description of the record may rationally be interpreted as a conservative treatment and could provide specific and legitimate support for assigning reduced weight to physician opinions, Bagdasaryan v. Saul, 787 F. App'x 423, 424 (9th Cir. 2019) (citing Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017)). However, the Court agrees with Plaintiff that in failing to distinguish the opinions of Dr. Fabella and Dr. Wagner in referencing the conservative treatment, in conjunction with an absence of any specific citations to any records that correspond with any of the opined limitations of Dr. Wagner or Dr. Fabella, the ALJ's citation to conservative treatment was not a sufficiently "specific" reason for assigning reduced weight.

The ALJ's method of review and comparison of multiple opinions together is likely permissible in many instances, but here, given the totality of the lack of clarity in the few limited sentences dedicated to weighing the consultative examinations, the Court cannot determinatively find a lack of potentially harmful error in the analysis, even affording the proper deference to the

ALJ's analysis and considering the other reasons provided in such section of the ALJ's order. Plaintiff is correct that as read, the ALJ cites to these two RFC assessments and essentially interprets them as drastically different in physical requirements in stating one is a range of sedentary opinion, and that one is a medium opinion. See 20 C.F.R. § 404.1567(a)-(c). The Court finds Plaintiff's highlighting of the fact that a sedentary opinion would result in a finding of disability in step 5, whereas a medium opinion would result in a finding of non-disability at step 5 based on, to be persuasive in this regard. It is unclear to the Court if the ALJ is positing the idea that Plaintiff's unspecified "conservative treatment" does not support "restrictive" and disabling sedentary physical limitations in Dr. Fabella's opinion, or whether the unspecified "conservative treatment" does not support the "less restrictive" and "non disabling" medium physical limitations of Dr. Wagner. The Court agrees with Plaintiff that this sentence is insufficiently specific and legitimate, particularly in light of the fact that the ALJ found Plaintiff could perform light work, which has physical requirements in between the other two RFC assessments.

While the treatment record very well may be conservative and not support the opined limitations,[4] the ALJ did not specifically tie such conservative treatment to each doctor's opinion, and thus the Court cannot find such reason to "specific" here in light of the confusing nature of the sentence and lack of description of the conservative treatment in the weighing

---

[4] Aside from Plaintiff's arguments concerning the lack of specificity in lumping the opinions together, Plaintiff also argues the ALJ's use of conservative treatment would not be a specific and legitimate reason to reject the outcome-determinative sedentary limitations because a review of the record reveals that Plaintiff was treated with physical therapy (AR 417-418); narcotic medication, including Norco/hydrocodone, Tramadol, Morphine and Oxycodone (AR 305; 326; 332; 343; 537; 1052; 1065; 1082; 1120; 1234; 1283; 1286; 1307); Toradol injections (AR 653); and that she underwent a **two** spine surgical consultations, but was told she did not qualify for surgery (AR 56; 588; 696). Plaintiff submits that in combination, this type of treatment is not considered "conservative treatment" by courts in this Circuit, Alexander C. v. Saul, No. 5:19-CV-02125-GJS, 2020 WL 6321765, at *5 (C.D. Cal. Oct. 28, 2020) (holding that a plaintiff who underwent a combination of surgery, physical therapy, multiple injections, narcotic medications and multiple prescription medications did not undergo "conservative" treatment); Bostock v. Berryhill, No. 2:18-CV-02565-JDE, 2018 WL 5906174, at *5 (C.D. Cal. Nov. 9, 2018) (detailing extensive case law establishing that a combination of steroid injections and narcotic medication is not "conservative treatment"); Agustin C. v. Saul, No. CV 18-6044-SP, 2020 WL 1491338, at *3 (C.D. Cal. Mar. 26, 2020). Defendant counters that the treatment was conservative and is properly specific and legitimate. (Opp'n 14.) The Court will not opine on whether an analysis of Plaintiff's treatment with a finding that such treatment is conservative with specific connections to each physician's opined limitations would be specific and legitimate, having found error in the statement as presented in connecting the two different consultative opinions in the same sentence referring to one as medium and one as sedentary, and discounting both because of conservative treatment in the record but finding the light opinion of the non-examining physicians to be supported.

1 portion of the opinion. Thus, the Court agrees with Plaintiff that the reference to conservative
2 treatment is impermissibly vague in the weighing portion of the opinion, and thus the rationale
3 cannot be found to be specific and legitimate. See Ward v. Berryhill, No. C16-1977-MJP-BAT,
4 2017 WL 4842342, at *4 (W.D. Wash. Oct. 5, 2017) ("It is also unclear from the ALJ's
5 characterization of the opinion in the June 2015 decision as being from multiple providers if the
6 ALJ considered the opinion as one from a non-acceptable medical source or from an acceptable
7 and non-acceptable medical source together."); Angelica R. v. Saul, No. CV 19-4191-E, 2019
8 WL 5618079, at *9 (C.D. Cal. Oct. 31, 2019) ("First, the ALJ's reasoning is insufficiently
9 specific. For the most part, the ALJ lumped together the multiple opinions of the workers
10 compensation treating physicians."); Rosa B. A. v. Saul, No. 2:19-CV-02550-AFM, 2020 WL
11 136592, at *5 (C.D. Cal. Jan. 10, 2020) ("In addition, the ALJ's reasoning is insufficiently
12 specific. The ALJ lumped together multiple opinions of the workers' compensation physicians.");
13 Griffis v. Astrue, No. C12-579-JLR-JPD, 2012 WL 6757348, at *6 (W.D. Wash. Dec. 10, 2012)
14 ("Finally, the ALJ broadly lumps all of the examining physician reports together and comments
15 that they are inconsistent with the opinions of non-examining reviewing State agency doctor
16 reports."); Jackson v. Berryhill, No. 3:17-CV-05312-DWC, 2018 WL 1466423, at *7 (W.D.
17 Wash. Mar. 26, 2018) ("In this case, the ALJ used conclusory reasoning multiple times in
18 discounting medical opinions . . . for both Dr. McDuffee and Dr. Bowes, the ALJ failed to
19 explain which aspects of the longitudinal record contradicted their particular findings . . .
20 Therefore, these were not specific, legitimate reasons, supported by substantial evidence, to
21 discount these physicians' findings."); Ford v. Comm'r of Soc. Sec. Admin., No.
22 CV2000276TUCJCHLAB, 2021 WL 6334968, at *6 (D. Ariz. Oct. 25, 2021) ("The ALJ did not
23 specify which of their limitations are 'excessive' and how they 'contrast sharply with the other
24 medical evidence in the record.' ").

25    Finally, the ALJ's finding that she maintained full motor strength of her extremities could
26 be a specific and legitimate reason to support a determination regrading lifting and carrying, but
27 not taken in isolation surrounded by the other unclear statements in the ALJ's opinion weighing
28 portion of the order, and particularly given the ALJ's statements concerning and use of

Plaintiff's testimony about her ability and strength level to lift gallons of milk from the refrigerator, which the Court now turns to.

> 3. The ALJ's Use of Testimony Regarding the Ability to Lift Weight was not Specific and Legitimate

Plaintiff argues the ALJ mischaracterized Plaintiff's testimony when the ALJ stated Plaintiff had testified she could lift up to 20 pounds, with no corresponding citation to the record. (AR 20.) Plaintiff also emphasizes that she reported she could not lift more than 10 pounds. (AR 696).

As excerpted above, when weighing the opinions of Drs. Fabella and Wagner, after referencing the conservative treatment, the ALJ stated that: "The undersigned notes . . . she testified that she could lift up to 20 pounds. She has also maintained full motor strength of her extremities despite her conditions." (AR 20.) At the hearing, Plaintiff testified in response to a question regarding how much weight she can lift:

> Q: How much can you lift and carry at one time comfortably?
>
> A  Lift and carry - - in weight?
>
> Q  Um-hum
>
> A  I'm trying to think what - - maybe ten pounds, 20, I don't - - I'm not sure what - -
>
> Q  How about a case of water for - -
>
> A  No, no, that's too heavy.
>
> Q  Okay, how about two gallons of milk from the refrigerator?
>
> A  That's about correct.

(AR 46.)

Defendant does not appear to disagree with Plaintiff's proffer that two gallons of milk weigh about 17.2 pounds, and not 20 pounds. (Br. 26 n.9; Opp'n 14.)[5] In the opposition brief,

---

[5] See also Vega v. Comm'r of Soc. Sec., No. 97 CIV.6438(AJP)(LAK, 1998 WL 255411, at *11 (S.D.N.Y. May 20, 1998) ("The Court takes judicial notice that one gallon of milk weighs approximately 8 ½ pounds . . . after weighing a gallon jug of milk, the Court chooses to take notice of the fact that a gallon jug of milk weighs approximately 8 ½ pounds.").

1  Defendant states: "Plaintiff testified at the hearing that she could lift up to twenty pounds, which
2  contradicted Dr. Fabella's opinion to sedentary work." (Opp'n 13-14.) Defendant further argues
3  that Plaintiff's reference to an ability to carry two gallons of milk supports, rather than detracts,
4  from the reasonableness of the ALJ's rationale, and states that Plaintiff appears to concede in
5  briefing that she could lift at least two gallons of milk weighing 17.2 pounds, "nearly twenty
6  pounds." (Opp'n 14.) Defendant notes that while Plaintiff points to her statement at Dr.
7  Fabella's consultative exam that she reported lifting no more than 10 pounds, this is contradicted
8  by testing at that same examination which found grip strength between 60 and 80 pounds.
9  (Opp'n 14 n.6, AR 698, 700.)

10  While there is merit to Defendant's arguments concerning the supportability of a finding
11  that Plaintiff can lift 20 pounds given the entirety of the record and Dr. Fabella's examination,
12  the fact remains that Plaintiff did not in fact affirm in testimony that she can lift 20 pounds.
13  Rather, Plaintiff testified that she could lift "about" two gallons of milk, which does not directly
14  equate to 20 pounds. (AR 46). The Court finds this problematic because the ALJ's order
15  expressly states that Plaintiff "testified that she could lift up to 20 pounds." (AR 20.) It is true
16  that she said the word "20" at one point, however, that was part of wholly equivocal testimony in
17  stating that she didn't know or wasn't sure. It was the equivocal answer that led the ALJ to
18  utilize the real-life example of two gallons of milk, an example that does not equate to 20
19  pounds. Thus, given the totality of this exchange, the Court does not agree with Defendant's
20  position in this regard, particularly in light of the fact that the ALJ presents no clarification
21  regarding the statement "she testified that she could lift up to 20 pounds." (AR 20.)

22  In light of the totality of the ALJ's reasons proffered for assigning reduced weight to the
23  consultative examination opinions, the Court finds the ALJ's reliance on Plaintiff's testimony
24  concerning lifting 20 pounds not to be specific and legitimate. See Bonner v. Colvin, No. CA12-
25  0603-C, 2013 WL 4523589, at *2 n.4 (S.D. Ala. Aug. 27, 2013) ("Again, this is not a true
26  reflection of plaintiff's testimony inasmuch as Bonner testified that he felt like he could 'pick up
27  about two gallons [of milk]' or up to '16 pounds'; he never testified that he can carry 16
28  pounds."); Contreras v. Berryhill, No. 19-CV-00305-DMR, 2020 WL 2128826, at *5 (N.D. Cal.

May 5, 2020) ("[T]he ALJ's characterization of Contreras's ADLs somewhat misstates her testimony and is not a specific and legitimate reason to discount Dr. Posada's opinions as to her functional limitations."); Avila Colvin, No. CV 16-838-PLA, 2016 WL 6205402, at *7 n.11 (C.D. Cal. Oct. 21, 2016) (" 'A: — this one is very difficult for me to move it or when I'm standing. I'm not able to walk. Q: Okay, you — well, I gather you mean you have difficulty walking? A. Yes.' . . . It is clear, therefore, that contrary to the ALJ's statement [], the meaning of plaintiff's testimony was **not** that she 'cannot move her left knee and is unable to walk.' ") (emphasis in original); but see Vega, 1998 WL 255411, at *11 ("Finally, Vega testified that he could carry at least two gallons of milk—which the Court finds weigh approximately 17 pounds—for up to one block . . . This suggests that Vega is capable of lifting up to twenty pounds occasionally, and 10 pounds frequently.").

### B. The Court Concludes Remand is Appropriate

Given the opined limitations of Dr. Fabella, the Court cannot find the above errors harmless and agrees that a different disability determination could have been reached if Dr. Fabella's opinion was credited. Because the Court finds the ALJ erred by failing to provide specific and legitimate reasons in the analysis when weighing Dr. Fabella and Wanger's opined limitations, and because such error was not harmless, the Court will not address Plaintiff's remaining challenges to the ALJ's findings concerning the RFC determination and Plaintiff's credibility. The Court finds that remand for further administrative proceedings is appropriate.

The ordinary remand rule provides that when "the record before the agency does not support the agency action, . . . the agency has not considered all relevant factors, or . . . the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014). This applies equally in Social Security cases. Treichler, 775 F.3d at 1099. Under the Social Security Act "courts are empowered to affirm, modify, or reverse a decision by the Commissioner 'with or without remanding the cause for a rehearing.' " Garrison, 759 F.3d at 1019 (quoting 42 U.S.C. § 405(g)). The decision to remand for benefits is

1  discretionary. Treichler, 775 F.3d at 1100. In Social Security cases, courts generally remand
2  with instructions to calculate and award benefits when it is clear from the record that the
3  claimant is entitled to benefits. Garrison, 759 F.3d at 1019. Even when the circumstances are
4  present to remand for benefits, "[t]he decision whether to remand a case for additional evidence
5  or simply to award benefits is in our discretion." Treichler, 775 F.3d at 1102 (quoting Swenson
6  v. Sullivan, 876 F.2d 683, 689 (9th Cir. 1989)).

7  The Ninth Circuit has "devised a three-part credit-as-true standard, each part of which
8  must be satisfied in order for a court to remand to an ALJ with instructions to calculate and
9  award benefits: (1) the record has been fully developed and further administrative proceedings
10 would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for
11 rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly
12 discredited evidence were credited as true, the ALJ would be required to find the claimant
13 disabled on remand." Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014). The credit as true
14 doctrine allows "flexibility" which "is properly understood as requiring courts to remand for
15 further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an
16 evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled.
17 Garrison, 759 F.3d at 1021.

18 The Court finds that based on the ALJ's opinion and the Court's review of the record,
19 serious doubts exist as to whether Plaintiff is in fact disabled due to her physical impairments.
20 The Court orders this action remanded for further administrative proceedings consistent with this
21 opinion, and to further develop the record as deemed necessary.

22 / / /
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

## V.

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ erred in failing to provide specific and legitimate reasons supported by substantial evidence in the record for the weight provided to the opinions of consultative examiners Dr. Wagner and Dr. Fabella.  Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is GRANTED and this matter is remanded back to the Commissioner of Social Security for further proceedings consistent with this order.  It is FURTHER ORDERED that judgment be entered in favor of Plaintiff Yvonne Joanne Hernandez and against Defendant Commissioner of Social Security.  The Clerk of the Court is DIRECTED to CLOSE this action.

IT IS SO ORDERED.

Dated:   **March 10, 2022**

UNITED STATES MAGISTRATE JUDGE